UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOUGLAS A. LEWALSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 3:20-CV-384-PPS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Douglas A. Lewalski appeals an administrative law judge's denial of his application for Social Security disability benefits. In doing so, he first alleges the ALJ erred in applying the incorrect standard when evaluating his subjective symptoms. After reviewing the record, I find that the ALJ misstated, rather than misapplied, the legal standard in evaluating Lewalski's subjective symptoms so that issue gets him nowhere. However, his second argument—that the ALJ failed to build a logical bridge connecting the evidence to the ALJ's residual functional capacity finding that Lewalski needed a 5% time-off limitation—has merit and a remand on that issue is warranted.

**Background**

Douglas A. Lewalski applied for disability insurance benefits in July 2017, claiming that he was disabled as of December 21, 2016. [AR 12.][1] As of this alleged

---

[1] The Administrative Record (AR) in this case is found at Docket Entry #14. Citations reference the Bates stamp page number in the lower right-hand corner of the AR.

onset date, Lewalski was 37 years old and had previously worked as a material handler, landscape specialist, and forklift operator. [AR 52, 56, 68-69.] After conducting a hearing, the ALJ denied Lewalski's disability benefits in a written opinion. [AR 34-76, 12-23.] The ALJ found that Lewalski had not engaged in substantial gainful activity since December 21, 2016, [AR 14], and that Lewalski had the severe impairments of lumbar spine degenerative disc disease, depression, and anxiety. [AR 14-15.] The ALJ also considered Lewalski's non-severe impairments, which included a history of rotator cuff/bicep repair and obesity. [AR 15.] The ALJ went on to find that Lewalski's combination of impairments did not meet or medically equal the severity contemplated by any of the Social Security Listings that would have made Lewalski presumptively disabled. [AR 15-16.]

Turning to Lewalski's residual functional capacity, the ALJ found that Lewalski was able to perform light work as defined in 20 C.F.R. 404.1567(b) except that he can never climb ladders, ropes or scaffold; occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; frequently balance; frequently use hand controls with his dominant upper extremity; and frequently reach with his right dominant upper extremity. He was further limited to simple and routine tasks; occasional interaction with the public; and must be permitted to be off task 5% of the workday due to impairment related symptoms including anxiety and back pain. [AR 16-21.]

At the hearing, the ALJ posed a series of hypothetical questions to a vocational expert based on the RFC. But, importantly, she never included in any of the questions

that the hypothetical person would be off task for 5% of the day. The VE testified that a hypothetical claimant with the limitations posed (absent the 5% restriction) could perform past relevant work as a landscape specialist, as well as a garment sorter, mail sorter, and laundry folder. [AR 22, 68-75.] Whether the VE's conclusion would have been the same had the hypothetical included a 5% time off task restriction is anybody's guess. Based in part on the VE's testimony, the ALJ found Lewalski was not disabled within the meaning of the Social Security Act [AR 23], a decision that was later affirmed by the Appeals Council. [AR 1-3.]

## Discussion

Whether or not Lewalski is disabled is not for me to decide—that's the job of the Social Security Administration. My role in the process is to review the ALJ's ruling to determine whether it applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). The review is light because the Supreme Court has stated that the "substantial evidence" standard is a modest one; it is even less than a preponderance of the evidence standard. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004).

My review is guided by the fact that, while the ALJ need not address every piece of evidence, she must build a "logical bridge" between the evidence and her findings and adequately discuss the issues so that I can evaluate the validity of the agency's

findings. *Shideler*, 688 F.3d at 310. The claimant bears the burden of proving a disability and presenting medical evidence supporting his allegations. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); 20 C.F.R. § 416.912(a).

Lewalski first argues that the ALJ erred when she used the incorrect standard of "entirely consistent" instead of "reasonably consistent" when evaluating his subjective symptoms and limitations and failed to adequately consider the combined impact of his impairments. [DE 17 at 11-22.] Specifically, Lewalski points out that the ALJ stated "the complaints are not *always* verified by the objective evidence. In addition, the complaints are not necessarily consistent throughout the *entire* period." [AR 15] (emphasis added). Additionally, Lewalski argues that the ALJ failed to build a logical bridge connecting the decision to include a 5% time off task limitation with the medical evidence.[2]

When evaluating a claimant's subjective symptoms, the correct standard is whether the subjective symptoms are reasonably consistent with the objective medical evidence. 20 C.F.R. § 404.1529(a). According to the regulations, "any symptom-related functional limitations and restrictions which you . . . report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account." 20 C.F.R. § 404.1529(c)(3). Additionally, "[y]our symptoms . . . will be determined to diminish your capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the . . . evidence." 20 C.F.R. §

---

[2] Lewalski raises other issues as well. [DE 17 at 11-15.] But in light of the decision below, I need not discuss them.

404.1529(c)(4). This is important to note "[b]ecause symptoms, such as pain, are subjective and difficult to quantify." 20 C.F.R. § 404.1529(c)(3). When an ALJ dismisses a claimant's subjective symptoms, she must follow up with an explanation for the rejection. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) (unpublished) (the ALJ dismissed the claimant's subjective symptoms because they were contrary to statements made to the claimant's doctors). Failing to account for this rejection may impact the ALJ's overall determination. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009); *see Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). An "ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence to support it." *Villano*, 556 F.3d at 562; 20 C.F.R. § 404.1529(c)(2). An ALJ's evaluation of subjective symptoms is vital to the disposition of the case and the ALJ must explain these conclusions with legally sufficient and specific reasons, supported by substantial evidence. *Villano*, 556 F.3d at 562.

Lewalski is correct in identifying the standard for his subjective symptoms as "reasonably consistent" with the evidence, not "entirely consistent" with the evidence. However, that language alone is not enough to remand this case. I must consider the ALJ's analysis to determine whether the standard was merely misstated rather than misapplied. Two parts of the decision specifically address this: step four and step five. During step four, the ALJ states "[Lewalski's] complaints are not always verified by the objective evidence. In addition, the complaints are not necessarily consistent throughout

the entire period." The ALJ's explanation briefly mentions intact concentration, a lack of suicidal ideations, no psychomotor agitation, no weight change, and a decrease in "flight of ideas" as inconsistencies. [AR 15.]

While I find the analysis in step four to be perfunctory, the ALJ expanded her analysis in step five when she considered the residual functional capacity. There, the ALJ identified many of Lewalski's subjective symptoms, both mental and physical. [AR 17-18.] She then explained in detail the medical evidence that does not support his subjective symptoms. [AR 18-20.] Regarding his physical symptoms, the ALJ discussed multiple treatments Lewalski received, including injections, physical therapy, and medications. While his symptoms persisted, Lewalski reported the decrease in pain and an increase in functional capacity. [AR 18.] The ALJ then discussed Lewalski's mental symptoms and compared it with the treatment notes from the Swanson Center. [AR 19-20.] In her analysis, the ALJ pointed out specific reasons to support her conclusion that Lewalski's medical records did not support his subjective mental symptoms. *Id.* After considering the ALJ's analysis, I find that while the ALJ misstated the standard, she explained her conclusions with legally sufficient and specific reasons, which were supported by substantial evidence. *Villano*, 556 F.3d at 562. For these reasons, the ALJ's use of the "entirely consistent" standard does not warrant remand.

Next, Lewalski argues that the ALJ failed to build a logical bridge connecting the medical evidence with the ALJ's determination of a 5% time off limitation in the residual functional capacity analysis. An ALJ must "sufficiently articulate his

assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (internal quotations omitted). In the RFC analysis, the ALJ stated "[Lewalski] must be permitted to be off task 5% of the workday due to impairment related symptoms, including anxiety and back pain." [AR 17.] The only discussion in the ALJ's decision is in analyzing nurse practitioner Kelly Clark's opinion that Lewalski "would be 10% off task and miss 2 days of work per month." [AR 21.] The ALJ gave this opinion only some weight, because she concluded that the opinion had internal inconsistencies: "Ms. Clark notes the claimant has no limitations and then she stated he would be off task and miss work." *Id.*

Setting aside for the moment whether the ALJ's rejection of Ms. Clark's opinion was correct, I'm at a loss to know why the ALJ concluded that Lewalski would be off task 5% of the time. Frankly, the 5% number seemingly came out of the blue. In making this finding, the ALJ was required to clearly articulate her analysis in the RFC based on the record. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("[T]he ALJ must account for the totality of a claimant's limitations in determining the proper RFC.") (internal citation omitted). I simply cannot determine from the decision or the medical records why the ALJ chose this number.

More importantly, even if the 5% time off task is supported by the medical evidence, the ALJ never incorporated the time off task limitation into the hypothetical questioning of the vocational expert. There must be some confidence that all limitations

are properly incorporated in the RFC and in the hypothetical questioning. *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). "[A]n ALJ must explicitly address those limitations in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying medical conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). None of those exceptions appear to apply here.

The ALJ posed four hypothetical questions to the VE. Although the ALJ states in her opinion that she posed hypothetical questions to the VE that incorporated all of the residual functional capacity, *see* AR at 23, in fact she did not. A review of the transcript from the administrative hearing reveals that the ALJ posed no questions to the VE accounting for a 5% time off task limitation. [AR 69-74.] The ALJ did pose one question to the ALJ regarding time off task in her fourth hypothetical. But that dealt with people who would be off task for 10% of the time, and indeed the VE verified that there would be no jobs available to such individuals. [AR 74.] Whether a 5% time off task limitation would be similarly disqualifying for the landscaping job (or any other job for that matter) is unknown.

While the ALJ need not evaluate each piece of evidence, she must build a logical bridge to support her decision. *Shideler*, 688 F.3d at 310. Here, the ALJ did not create a logical bridge between the evidence and her conclusion that a 5% time off task

-8-

limitation is supported by the substantial evidence. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). And in all events, she did not include the 5% time off limitation into her hypothetical questioning of the VE. A remand is therefore warranted to determine if the 5% number is supported by the medical evidence and, if it is, whether it would affect the jobs available to Lewalski.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Douglas A. Lewalski's application for Social Security disability benefits is **REVERSED AND REMANDED**.

SO ORDERED on September 15, 2021.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT